982 F.2d 528
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Charles C. HARRIS, Plaintiff-Appellant,
v.
Marc NORVELL, Sergeant Bailey, and John Doe, Defendants-Appellees.
 No. 92-6185.
 United States Court of Appeals, Tenth Circuit.
 Dec. 11, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Pro se plaintiff Charles C. Harris sued officials of the Oklahoma Department of Corrections (collectively referred to as "defendants") under 42 U.S.C. § 1983, claiming his constitutional rights were violated with regard to the handling of his property when he was transferred to Ouachita Correctional Center from the Kate Barnard Correctional Center in July 1991. Specifically, he claims that he was not allowed to witness the inventory of his property prior to the transfer; that some of his property was either improperly sent to his designee, retained at the Kate Barnard Correctional Center, or destroyed; that some of the material sent to his designee, retained, or destroyed, included legal papers, and because he did not receive those papers, he was effectively denied access to the courts; and that prison officials damaged his color television set in retaliation for bringing this suit.
 
 
 3
 The U.S. Magistrate Judge ordered the defendants to submit a special report, Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978) (per curiam), which they filed simultaneously with a motion to dismiss. In their motion, defendants contended that (1) dismissal was appropriate because they were entitled to qualified immunity; (2) that any claim against them in their official capacities would not lie under § 1983; and (3) that Harris has not suffered an unconstitutional deprivation of his property. The Magistrate Judge notified Harris that the motion would be treated as one for summary judgment and gave him an opportunity to respond. In a subsequent order denying Harris' motion for discovery, the Magistrate Judge advised Harris that he was authorized to proceed with discovery without an order from the court, and that should Harris need additional time to complete relevant discovery, the court would entertain such a motion. The defendants then filed a motion for a protective order, claiming that qualified immunity shields public officials from the burdens of litigation, including discovery. Following Harris' response to defendants' motions, the Magistrate Judge recommended that the district court grant summary judgment in favor of defendants. The district court adopted the Magistrate Judge's Report and Recommendation, and dismissed Harris' complaint. On appeal, Harris reargues issues presented below and also claims he was improperly denied additional discovery, an evidentiary hearing and appointment of counsel. We affirm. Harris has failed to show the existence of any genuine issue of material fact. The dismissal was appropriate for failure to identify a constitutional violation.
 
 DISCUSSION
 
 4
 We review de novo the district court's grant of summary judgment, applying the same standard as the trial court employed under Fed.R.Civ.P. 56(c). Smith v. Maschner, 899 F.2d 940, 942 (10th Cir.1990). We examine the record to determine if any genuine issue of material fact was in dispute; if not, we must decide if the district court correctly applied the substantive law. Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986). In reviewing the district court's decision, "we construe all pleadings and documentary evidence liberally in favor of the party opposing the motion." Id.
 
 
 5
 Harris first alleges that he was not allowed to witness the inventory of his property prior to his transfer to Ouachita Correctional Center ("OCC"). He does not identify any policy or regulation which creates a liberty interest in witnessing an inventory by virtue of mandatory language constraining official discretion. See Hewitt v. Helms, 459 U.S. 460, 471 (1982) (no liberty interest created in prison regulation unless its language is of an "unmistakably mandatory character"). The policy with respect to inventorying states as follows: "The inventory [of a transferring inmate's personal property] shall normally be completed in the presence of the inmate." Special Report, R.Vol. I, Doc. 16, Attachment E at 3 (emphasis added). This language does not, on its face, sufficiently constrain official discretion so as to create a liberty interest in witnessing the inventory of one's property. Even if it did, the record indicates, and Harris does not dispute, that while he was awaiting transfer to OCC, he was in restrictive housing because he had accumulated excessive security points. Special Report, R.Vol. I, Doc. 16, Attachment F. It was therefore not feasible to have Harris present during the inventory. Harris' security violations provided a valid reason for conducting the inventory in his absence, and prison officials were justified in treating this as other than a "normal" situation. In short, Harris fails to identify any constitutional right of which he was deprived.
 
 
 6
 Harris also claims that, subsequent to the inventory, some of his property was either "improperly detained" by unnamed prison officials or sent to his designee. He also suggests that some of his property may have been destroyed, but he does not attempt to develop that point. He does not allege that the deprivation was pursuant to any official policy.
 
 
 7
 Taking his claim on its face, it does nothing more than state that someone without authorization either negligently or intentionally detained or destroyed his property. However, neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981); see also Smith v. Maschner, 899 F.2d at 943. The district court concluded, and we agree, that Oklahoma law provides Harris adequate post-deprivation remedies. See, e.g., Okla.Stat. tit. 12, § 1571 (replevin); Okla.Stat. tit. 51, § 151-171 (Governmental Tort Claims Act). Accordingly, Harris has failed to identify any violation of his Fourteenth Amendment right to due process.
 
 
 8
 Harris next claims that when he was transferred to OCC, some of his legal papers were lost or destroyed, or sent to his designee, and that his resulting lack of immediate access to such materials deprived him of his right of access to the courts. A prison inmate's constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Moreover, prison officials may not affirmatively impede a prisoner's efforts to pursue a nonfrivolous legal claim. Green v. Johnson, No. 90-7062, 1992 WL 282079 at * 5 (10th Cir.
 
 
 9
 Oct. 16, 1992) (citing Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir.1986)).
 
 
 10
 The record shows that one box of Harris' miscellaneous papers was sent with him to OCC, and one box was packed to go to his designee. Special Report, R.Vol. I, Doc. 16, Attachments C and D. Harris does not specifically deny these facts; rather, he continues to make a general claim that some papers were lost. Harris' statements that he has been denied access to court are wholly conclusory. Although Harris identifies certain litigation in his response to defendants' motion to dismiss, he does not (a) identify particular documents; (b) show how the allegedly lost documents relate to the litigation; (c) assert any facts showing that his pursuit of any litigation identified by him was in any way affected by his lack of access to any particular document; or (d) claim any specific prejudice relating to the alleged loss. For example, he does not assert that any action has been dismissed or any filing disallowed as untimely. In short, he does not indicate how he has been "denied access" within constitutional parameters. Twyman v. Crisp, 584 F.2d 352, 357-58 (10th Cir.1978). Thus, we agree with the district court that Harris has failed to establish the existence of a genuine issue of material fact or to even plead a constitutional claim with respect to his right of access to the courts allegations. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based").
 
 
 11
 Next, Harris argues that his color television set was damaged in retaliation for bringing this lawsuit. He does not identify any defendant by name, nor does he specify the circumstances under which the television set was damaged, nor does he indicate in what way the television set was damaged.
 
 
 12
 It is well established that prison officials may not retaliate when inmates take steps to secure their constitutional guarantees. Smith v. Maschner, 899 F.2d at 947. However, bare allegations of retaliation do not suffice: "it is imperative that plaintiff's pleading be factual and not conclusory.... [P]laintiffs must ... allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. DuBois, 922 F.2d 560, 562 n. 1 (10th Cir.1990). Harris sets forth no facts to show that his television was damaged for retaliatory purposes, and he names no responsible party. Accordingly, his retaliation claim must also fail.
 
 
 13
 Finally, Harris asserts that the district court erred in denying his motion for discovery, in denying him an evidentiary hearing, and in denying his motion for appointment of counsel. He also claims that the court "used technicalities of court rules in favor of the defendants to prevent the plaintiff from showing facts...." Appellant's Brief at 1.
 
 
 14
 Discovery matters are within the broad discretion of the trial court, and we will not find an abuse of that discretion absent a showing of prejudicial error. Green v. Johnson, No. 90-7062, 1992 WL 282079 at * 7 (10th Cir. Oct. 16, 1992). In his response to defendants' motion for protective order, Harris protested that he needed additional discovery from the correctional center's administrative files to show other occasions on which he and other inmates had been deprived of their property. The district court determined that such evidence not only would be irrelevant to this proceeding, but also would be unnecessary and unduly burdensome given Harris' failure to allege facts amounting to a constitutional violation. Because further discovery would not have altered the outcome of this case, we find that the district court did not abuse its discretion. Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1985) (summary judgment should be granted where the evidence is so one-sided that one party must prevail).
 
 
 15
 The record does not show that Harris requested an evidentiary hearing or moved for the appointment of counsel during the proceedings below. Harris raises these matters for the first time in his brief on appeal. Apparently, his argument is that the district court erred in not sua sponte granting an evidentiary hearing and appointing counsel. In both of these matters, the district court is afforded broad discretion. See United States v. Gines, 964 F.2d 972, 977 (10th Cir.1992) (standard of review for denial of evidentiary hearing is abuse of discretion); Miller v. Glanz, 948 F.2d 1562, 1572 (10th Cir.1991) (appointment of counsel within sound discretion of district court). On this record, the district court did not err in failing, on its own motion, to grant Harris an evidentiary hearing or to appoint counsel.
 
 
 16
 As to Harris' claim that use of the "technicalities of court rules" placed him at a disadvantage, we note that pro se appellants are subject to the same rules of procedure that govern other litigants. Bradenburg v. Beaman, 632 F.2d 120, 122 (10th Cir.1980).
 
 
 17
 The district court's grant of summary judgment in favor of defendants is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3